```
         UNITED STATES DISTRICT COURT
            DISTRICT OF MINNESOTA
          Civil No. 14-1446(DSD/FLN)
```

Nissan North America, Inc.,

      Plaintiff,

v.                                                      **ORDER**

Wayzata Nissan, LLC,

      Defendant.

>Brandon L. Bigelow, Esq., Caleb J. Schillinger, Esq., William N. Berkowitz, Esq. and Bingham McCutchen LLP, One Federal Street, Boston, MA 02110; John Rock, Esq. and Rock Law LLC, 120 South Sixth Street, Suite 2050, Minneapolis, MN 55402, counsel for plaintiff.
>
>Aaron R. Thom, Esq., Christopher W. Madel, Esq., Nicole S. Frank, Esq. and Robins, Kaplan, Miller & Ciresi LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motions to dismiss[1] and for preliminary injunction by defendant Wayzata Nissan, LLC (Wayzata Nissan). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion to dismiss without prejudice and denies the motion for preliminary injunction without prejudice.

---

[1] Under the Local Rules, "[a]t any time after a party files a dispositive motion and the motion's supporting documents, the court may ... cancel a hearing and notify the parties that the motion will be otherwise resolved." D. Minn. L.R. 7.1(c)(5)(A)(iv). As a result, the parties are hereby notified that the September 12, 2014, hearing on the instant motion is canceled.

**BACKGROUND**

This business dispute arises out of the relationship between Wayzata Nissan and plaintiff Nissan North America, Inc. (Nissan N.A.). Nissan N.A. is a California corporation that manufactures and markets Nissan vehicles through a network of authorized dealers. Compl. ¶ 1. On June 26, 1996, Wayzata Nissan and Nissan N.A. entered into a Dealer Sales and Service Agreement (DSSA) that allows Wayzata Nissan to purchase and sell Nissan vehicles. Id.

On November 27, 2013, Wayzata Nissan filed suit (First Action) in Minnesota court, alleging violations of Minnesota Statutes § 80E.13(o) and a breach of the implied covenant of good faith and fair dealing. See Wayzata Nissan, LLC v. Nissan N. Am., Inc., No. 13-3651 (D. Minn. filed Dec. 31, 2013). Nissan N.A. timely removed the First Action.

Before commencing the First Action, Wayzata Nissan co-owner Randall Lammle consulted with an attorney in California about creating a trust (Trust) in that state. Wayzata Nissan, No. 13-3651, ECF No. 52-2, at 83:13-16, 84:13-17. At that time, Lammle asked his half-brother, Mark Regan, to serve as trustee for the Trust. Id. ECF No. 52-3, at 48:13-19. Regan is a citizen of California. Id. at 8:25-9:2.

On November 14, 2013, Wayzata Nissan amended its Member Agreement to permit transfers of membership units to trusts created by its members. See id. ECF No. 52-12. On November 18, 2013,

Lammle established the Trust with his wife named as the sole beneficiary and transferred a 0.5% ownership[2] share in Wayzata Nissan to the Trust. See id. ECF No. 52-13. Lammle funded the Trust with a gift of $19,250. Id. ECF No. 52-2, at 249:18-250:5. The Trust then purchased the ownership interest from Lammle for $19,000. Id. ECF No. 52-3, at 106:20-25.

On May 8, 2014, Nissan N.A. filed the instant complaint, seeking a declaratory judgment that (1) a proposed relocation of a Nissan dealership to Eden Prairie, Minnesota - approximately 7.7 miles from Wayzata Nissan - does not violate the DSSA and (2) Nissan N.A. is not required to provide Wayzata Nissan with official notice of the proposed relocation. On July 11, 2014, Wayzata Nissan moved for a preliminary injunction,[3] seeking to enjoin Nissan N.A. from establishing the dealership in Eden Prairie. Thereafter, on July 18, 2014, Wayzata Nissan filed a thirteen-count counterclaim against Nissan N.A., Stephen J. McDaniels, McEP Investments, LLLC and EP Motors, Inc.

---

[2] Before the transfer, Lammle owned a 20% ownership share in Wayzata Nissan. Wayzata Nissan, No. 13-3651, ECF No. 1-1, at ¶ 17.

[3] Previously, on June 9, 2014, Wayzata Nissan moved for a preliminary injunction in the First Action. See Wayzata Nissan, No. 13-3651, ECF No. 79. The court heard oral argument on June 16, 2014, and all parties appeared through counsel.

**DISCUSSION**

**I.   Standard of Review**

The Declaratory Judgment Act, 28 U.S.C. § 2201, grants courts discretion to declare rights.  Twin City Fed. Sav. & Loan Ass'n v. Gelhar, 525 F. Supp. 802, 804 (D. Minn. 1981). "An action for declaratory relief properly should be entertained where a judgment will serve a useful purpose in clarifying and settling legal relations, and where it will terminate the proceedings and afford relief from uncertainty, insecurity and controversy."  Id. (citation omitted).

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citations and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements

of a cause of action" are not sufficient to state a claim. Iqbal, 129 S.Ct. at 1949 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6). See Fed. R. Civ. P. 12(d). The court, however, may consider matters of public record, materials that do not contradict the complaint, exhibits attached to the complaint and materials that are "necessarily embraced by the pleadings." See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). Here, the documents regarding jurisdictional discovery from the First Action are matters of public record and are properly considered by the court.

**II. Diversity Jurisdiction**

Wayzata Nissan argues that dismissal is warranted for lack of subject-matter jurisdiction. Nissan N.A. responds that the court has diversity jurisdiction under 28 U.S.C. § 1332. Diversity jurisdiction under 28 U.S.C. § 1332 requires an amount in controversy greater than $75,000 and complete diversity of citizenship. "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007) (citation omitted). Wayzata Nissan argues that complete diversity is lacking because both Regan - as trustee of the Trust that owns 0.5% of Wayzata Nissan - and Nissan N.A. are

California citizens. See U.S. Bank Nat'l Ass'n v. Polyphase Elec. Co., No. 10-4881, 2011 WL 3625102, at *1 (D. Minn. Aug. 17, 2011) ("[T]he trustee's citizenship is what matters for the purposes of diversity jurisdiction." (citation omitted)).

Nissan N.A. responds that the court should disregard Regan's citizenship because the transfer to the Trust was (1) ultra vires under Wayzata Nissan's 2009 Member Agreement, (2) void ab initio under the terms of the Purchase Agreement between Lammle and the Trust and (3) the product of collusion.

**A.   Ultra Vires**

Nissan N.A. first argues that the transfer to the Trust was ultra vires under Wayzata's Member Agreement. After the November 14, 2013, amendment, the Member Agreement provided that:

> [A] Member may transfer up to 10% of his Membership units to a trust if (i) the trust was created by that Member, (ii) the primary beneficiary of the trust is one or more immediate family members of the Member, (iii) the trustee becomes a party to this Agreement by executing and delivering an appropriate consent to [Wayzata Nissan], and (iv) *if any franchise agreement to which [Wayzata Nissan] is a party requires consent of a manufacturer for the transfer of Membership interests, such consent has been obtained before the Membership interests are transferred to the trust*.

Wayzata Nissan, No. 13-3651, ECF No. 52-12, at WN00000060 (emphasis added). Further, the Member Agreement provides that "[a]ny attempted sale, assignment or other transfer of [membership] units in contravention of the terms of this Agreement shall be void and

6

shall not be recognized on the books of" Wayzata Nissan.  Id. ECF No. 52-7, at WN00000065-66.

Nissan N.A. argues that the DSSA required its approval before any transfer of membership interests and that Lammle failed to obtain such approval before transferring the membership interest to the Trust.  Wayzata Nissan responds that the transfer at issue - from a minority owner to an outside trust - did not require such notice.  The court agrees.  The DSSA provided that Wayzata Nissan "agrees that any change in the ownership of [Wayzata Nissan] ... requires the prior written consent of [Nissan N.A.], excepting only changes in the record or beneficial ownership interests of Other Owner(s) not effecting a change in majority control or interest." Id. ECF No. 52-1, at 2.  Wayzata Nissan argues that Lammle is an "Other Owner" and that, as such, is free to transfer his ownership interest without the approval of Nissan N.A.  Nissan N.A. responds that the only transfers excluded from the general written consent requirement are transfers between two existing owners.

Under California law,[4] "[i]n the interpretation of contracts, the duty of the court is to ascertain the intent of the parties. Although the language of the contract must govern its

---

[4] The DSSA provides that it "shall be deemed to have been entered into in the State of California, and all questions concerning the validity, interpretation or performance of any of its terms or provisions ... shall be governed by and resolved in accordance with the internal laws of the State of California." Wayzata Nissan, No. 13-3651, ECF No. 52-1, at 49.

interpretation ..., nevertheless the meaning is to be obtained from the entire contract, and not from any one or more isolated portions thereof." Lemm v. Stillwater Land & Cattle Co., 19 P.2d 785, 788 (Cal. 1933) (citations omitted). "Although the intention of the parties is to be ascertained from the writing alone, if possible ..., [a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." Hess v. Ford Motor Co., 41 P.3d 46, 51 (Cal. 2002) (second alteration in original) (citations and internal quotation marks omitted). "In construing a contract, the question whether an uncertainty or ambiguity exists is one of law ...." Brant v. Cal. Dairies, 48 P.2d 13, 16 (Cal. 1935).

Here, the DSSA unambiguously provides that no notice to Nissan N.A. was required for the transfer from Lammle to the Trust because the transfer was a "change[] in the record or beneficial ownership interests of Other Owner(s)," as Lammle was an Other Owner under the DSSA. See Wayzata Nissan, No. 13-3651, ECF No. 52-1, at 3; see also id. at 2, 5 (outlining two categories of owners - Other Owner(s) and Principal Owner(s) - and listing Saliterman as the only Principal Owner). Further, the transfer did "not effect[] a change in majority control or interest," as Saliterman maintained his ownership interest and remained the majority owner of Wayzata Nissan after the transfer. See id. at 2.

8

Nissan N.A.'s attempt to limit the excluded transfers to those *between* two Other Owners is unavailing.  No such requirement is included in the section of exclusions, and the court will not read an ambiguity into the plain language of the contract. Further, the DSSA expressly excludes from the notice provision transfers by a single "Other Owner" or multiple "Other Owners."  See id. (excluding "changes in the record or beneficial ownership interest of Other Owner*(s)*" (emphasis added)).  Thus, Nissan N.A.'s argument that the exclusion applies only to transfers between two "Other Owners" is untenable.  As a result, the court finds that no notice to Nissan N.A. was required before transfer to the Trust and the transfer was not ultra vires.

B.   **Void ab Initio**

Nissan N.A. next argues that the transfer to the Trust was void ab initio under the purchase agreement entered into by Lammle and the Trust (Purchase Agreement).  See Wayzata Nissan, No. 13-3651, ECF No. 52-14.  The Purchase Agreement provided that:

> Notwithstanding any representations to the contrary with respect to the sale contemplated by this Agreement (the "Sale"), no consent of any franchisor is required under any franchise agreement and the Sale will not place [Lammle] or [Wayzata Nissan] in breach of any contractual obligation to any third party.  If the sale would place either [Lammle] or [Wayzata Nissan] in breach, the sale is void ab initio.

Id. at ¶ 9(c).  A contract that is "void ab initio" is one that "never went into effect."  In re Millers' & Mfrs. Ins. Co., 106

9

N.W. 485, 493 (Minn. 1906). Nissan N.A. argues that notice was required before any transfer to the Trust and because no such notice was given, the transfer placed Wayzata Nissan into breach of the DSSA. As already explained, however, no notice to Nissan N.A. was required. As a result, the transfer was not void ab initio, and such an argument is unavailing.

### C.   Collusive Transfer

Finally, Nissan N.A. argues that the court should disregard the citizenship of the Trust because the transfer to the Trust was intended to divest the court of jurisdiction. Specifically, Nissan N.A. argues that such a transfer is akin to a collusive assignment, which the court may disregard for purposes of diversity jurisdiction. Under 28 U.S.C. § 1359, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." See also Bartnick v. Reader Co., 487 F.2d 1021, 1021 (8th Cir. 1973) (per curiam) ("[A]n appointment solely to create diversity jurisdiction will not be recognized by federal courts."). Further, although not explicitly enumerated by statute, the court may examine whether assignments that *destroy*, rather than *create*, diversity jurisdiction are the product of collusion. See, e.g., Attorneys Trust v. Videotape Computer Prods., 93 F.3d 593, 595 (9th Cir. 1996) ("Even though the case at hand is a destruction of diversity

case, we will survey the cases which refer to creation of diversity because the informing principles are much the same.").

As a threshold matter, the court notes that the Eighth Circuit is silent as to whether the transfer of assets to a party - as opposed to the assignment of claims - is properly analyzed under the collusive assignment doctrine. But see Spillers v. Chevron USA Inc., No. 11-2163, 2013 WL 869387, at *3 (W.D. La. Mar. 6, 2013) ("While the assignment of a five percent interest in the underlying property, as compared to the assignment of a claim, may distinguish ... the instant matter, the Court finds that it is a distinction without difference." (citation omitted)). Even if the collusive assignment doctrine applies, however, dismissal is warranted. In analyzing whether an assignment is collusive, the court examines several factors, including

> were there good business reasons for the assignment; did the assignee have a prior interest in the item or was the assignment timed to coincide with commencement of litigation; was any consideration given by the assignee; was the assignment partial or complete; and was there an admission that the motive was to create jurisdiction.

Attorneys Trust, 93 F.3d at 595-96 (citations omitted). "In short, federal courts basically focus upon the reality of the transaction itself to determine whether the assignee is truly the real party in interest, or merely a strawman or collection agent." United Fire & Cas. Co. v. City of Jamestown, No. A3-98-91, 1998 WL 1776578, at *1 (D.N.D. Dec. 31, 1998) (citation omitted).

11

Here, Nissan N.A. argues that the transfer to the Trust occurred only nine days before the First Action was filed and that the dispute between Wayzata Nissan and Nissan N.A. had already arisen at the time of the transfer. Such suspicious timing, however, is outweighed by the other collusive assignment factors. Specifically, Wayzata Nissan has proffered a reasonable explanation for the transfer : that Lammle transferred the assets as a means of estate planning. Moreover, the transfer of the assets to the Trust was a bona fide transfer rather than illusory, as the Trust is now a party in interest and an actual member of Wayzata Nissan. See Nat'l Surety Corp. v. Inland Props., Inc., 286 F. Supp. 173, 183-84 (E.D. Ark. 1968) ("If the assignment or transfer is a bona fide, actual transaction whereby the transferee or assignee becomes the real party in interest, section 1359 is not applicable even though the transfer or assignment may have been motivated in whole or in part by a desire to create diversity of citizenship for purposes of litigation." (citations omitted)).

Nissan N.A. further argues that Wayzata Nissan had a motive to avoid federal court. Specifically, Nissan N.A. argues that Wayzata Nissan was a defendant in a separate matter in this District, in which Saliterman was found to have made "knowing misrepresentations" under oath. See Kia Motors Am., Inc. v. Wayzata Nissan LLC, No. 06-156, ECF No. 390 (D. Minn. Oct. 17, 2008). Such a theory, however, is entirely speculative and does

not amount to "an admission that the motive [of the transfer] was to [destroy] jurisdiction." Attorneys Trust, 93 F.3d at 596 (citations omitted). As a result, the court finds that the collusive assignment doctrine does not apply. Therefore, the court does not have federal jurisdiction, and dismissal without prejudice is warranted.[5]

**III. Counterclaims**

The court "may exercise jurisdiction over a compulsory counterclaim after the original claim has been dismissed for lack of subject matter jurisdiction if the counterclaim has an independent basis for jurisdiction." Columbia Gas Transmission Corp. v. Drain, 191 F.3d 552, 559 (4th Cir. 1999) (citations omitted). Here, however, the counterclaims suffer from the same defects in subject matter jurisdiction as the original claim. As a result, dismissal of the counterclaims without prejudice is warranted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion to dismiss [ECF No. 9] is granted without prejudice;

---

[5] Having determined that it lacks jurisdiction over this matter, the court denies the motion for preliminary injunction without prejudice.

    2.    The motion for preliminary injunction [ECF No. 22] is denied without prejudice;

    3.    The counterclaims are dismissed without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: July 23, 2014

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court